# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 24 2019, 9:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Renee M. Ortega
Lake County Juvenile Public
Defender's Office
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Benjamin M. L. Jones
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of M.R. and L.R. (Minor Children) and L.R. (Mother) | October 24, 2019 |
| | Court of Appeals Case No. 19A-JT-992 |
| L.R. (Mother), | |
| *Appellant-Respondent,* | Appeal from the Lake Superior Court |
| v. | The Honorable Thomas P. Stefaniak, Jr., Judge |
| Indiana Department of Child Services, | Trial Court Cause Nos. 45D06-1811-JT-341 45D06-1811-JT-342 |
| *Appellee-Petitioner* | |

**Vaidik, Chief Judge.**

# Case Summary

[1] L.R. ("Mother") appeals the termination of her parental rights to two of her three children. We affirm.

# Facts and Procedural History

[2] Mother is the biological parent of three children: M.R., born in 2004, S.R., born in 2006, and L.R., born in 2010. The facts that follow are taken primarily from the trial court's findings of fact, none of which Mother challenges on appeal.[1]

[3] In September 2012, Mother, M.R., S.R., and L.R. lived with E.R., biological father to L.R. and stepfather to M.R. and S.R. (hereafter, "Stepfather"). On September 13, the Department of Child Services (DCS) received a report that M.R. and S.R. were being sexually abused by Stepfather. Mother kicked Stepfather out of the house and sought a no-contact order against him. Later, she divorced Stepfather. DCS filed petitions alleging that M.R. and S.R. were children in need of services (CHINS) due to the allegations of sexual abuse by Stepfather. DCS did not remove M.R. and S.R. from Mother's care but recommended that Stepfather not enter Mother's house and have no contact with M.R. and S.R. At the initial hearing, Mother admitted the allegations in the CHINS petition regarding Stepfather's sexual abuse of M.R. and S.R. The

---

[1] Because Mother does not challenge the trial court's findings of fact, we accept them as true. *See Maldem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992).

trial court found that M.R. and S.R. were CHINS and ordered that Mother, M.R., and S.R. participate in counseling, clinical assessments, and home-based caseworker services.

[4] About two weeks later, on September 28, DCS received a report that there were "a lot of people" coming and going from Mother's house, that the house was being used for drug dealing, that the house and children were filthy, and that there was "not a lot of food" in the house. Ex. H. That same day, DCS removed M.R., S.R., and L.R. from Mother's care and placed them at Carmelite Home for Children. Thereafter, DCS filed a CHINS petition regarding L.R., alleging that Mother's house and L.R. were filthy, that there were lots of people coming and going from the house, and that suspected drug dealing was taking place. Mother admitted the allegations of the CHINS petition, and the trial court adjudicated L.R. a CHINS. The trial court also ordered that M.R., S.R., and L.R. continue in their placement at Carmelite Home.

[5] In October 2012, following a dispositional hearing, the court ordered that Mother participate in services, including a substance-abuse assessment, drug and alcohol screens, individual and family counseling, a clinical assessment, and supervised visitation. In the beginning, Mother participated in some services but then over the next six years, her participation became sporadic. At the 2013 review hearings, the trial court found that Mother was not complying with services and was still testing positive for marijuana but that she was receiving treatment for her drug addiction at Transitions. *See* Ex. O. At the

2014 review hearings, the trial court found that Mother had checked herself out of treatment at Transitions, missed a group therapy session, and continued to test positive for marijuana. *See* Ex. W. At the March 2015 review hearing, the trial court found that Mother had begun engaging in some services but was inconsistent with drug screens. *See* Ex. OO. By the June 2015 review hearing, the trial court found that Mother had become inconsistent with services and that most of her drug screens were positive. *See* Ex. QQ. A year later, in May 2016, Mother had reengaged in some services but remained inconsistent with drug screens. *See* Ex. VV. In August 2016, Mother tested positive for alcohol, and in October 2016, she tested positive for cocaine. *See* Ex. BBB. In March and April 2017, Mother tested positive for marijuana, and in June 2017 she was evicted from her subsidized housing for not paying rent. *See* Exs. III, LLL. At the December 2017 review hearing, Mother failed to appear, and DCS reported that Mother had not participated in services since September 2017 and that DCS had been unable to contact her. *See* Exs. NNN, OOO. In February 2018, Mother contacted DCS and told them that she had just returned to Indiana from living in Iowa for the past four months. Mother did not inform DCS that she was moving to Iowa before doing so. Throughout the remainder of 2018, Mother continued to be non-compliant with services and tested positive for marijuana. *See* Ex. RRR. Meanwhile, M.R., S.R., and L.R. remained placed at Carmelite Home for Children from September 2012 until October 2014, when they were placed in a pre-adoptive foster home.

[6] In November 2018, DCS filed petitions to terminate Mother's parental rights as to M.R. and L.R. (collectively, "Children"). A termination petition was not filed regarding S.R. because DCS had not located a pre-adoptive home for her. In December 2018, S.R. was separated into a different foster placement than her siblings due to some behavioral issues she was having.

[7] A fact-finding hearing on the termination petitions was held in March 2019. Family Case Manager (FCM) Shani Brown testified that in the year she was assigned to the case, Mother completed some, but not all, services ordered by the court. Tr. p. 12. FCM Teresa Abell testified that she was the family's case manager for almost two years and that during that time Mother moved to Iowa for four months without informing DCS. *Id.* at 16. FCM Abell said that since Mother returned from Iowa in February 2018, "she never consistently participated in her services." *Id.* at 18. FCM Abell recommended that Mother's parental rights be terminated and that Children be available for adoption. *Id.* at 22. FCM Abell said that Children had been placed in their pre-adoptive foster home for "over four years" and that allowing them to be adopted "will allow [Children] to have permanency and achieve stability in their lives." *Id.* Harold Barnwell, M.R.'s homebased caseworker, testified that he had been working with M.R. for over two years on "emotional behavior modification, interaction skills, honesty," and that since M.R. had been placed in the pre-adoptive foster home his maturity level has improved and he stopped lying. *Id.* at 43. Barnwell said that he agreed with termination of Mother's parental rights because he did not want to see M.R. regress. *See id.* at 44-45.

Mother testified that she had "been smoking marijuana since [she] was sixteen" and has "PTSD, depression and anxiety." *Id.* at 36. In April 2019, the court issued its order terminating Mother's parental rights.

Mother now appeals.

# Discussion and Decision

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re K.T.K.*, 989 N.E.2d 1225, 1229 (Ind. 2013). Rather, we consider only the evidence and reasonable inferences that are most favorable to the judgment of the trial court. *Id.* When a trial court has entered findings of fact and conclusions of law, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* To determine whether a judgment terminating parental rights is clearly erroneous, we review whether the evidence supports the trial court's findings and whether the findings support the judgment. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016).

A petition to terminate parental rights must allege, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *In re K.T.K.*, 989 N.E.2d at 1231. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[11] Mother first argues there is insufficient evidence to support the trial court's conclusion that the conditions resulting in Children's removal will not be remedied. In determining whether the conditions that resulted in a child's removal will not be remedied, the trial court engages in a two-step analysis. "The court first identifies the conditions that led to removal and then determines whether there is a reasonable probability that those conditions will not be remedied." *In re A.W.*, 62 N.E.3d 1267, 1273 (Ind. Ct. App. 2016) (citing *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014)). A parent's fitness is measured at the time of the termination hearing, and changed circumstances are balanced against habitual patterns of conduct to see if there is a "substantial probability of future neglect or deprivation." *Id.* Trial courts have discretion to

weigh a parent's history more heavily than efforts made shortly before termination, and the court may find that a parent's past behavior is the best predictor of future behavior. *Id.*

[12] Here, Mother has failed to demonstrate that she is any closer to providing Children a safe, stable home than she was at the beginning of the CHINS case. The evidence shows that Mother did not follow through with the services offered to her, has not maintained stable housing, continues to test positive for marijuana, and is unable to provide for the basic needs of Children. Appellant's App. Vol. II p. 52. The trial court found that "[f]or over six years, [Mother] failed to utilize the available services and make the necessary efforts to remedy the conditions, which led to intervention by DCS and the Court." *Id.* at 52-53; *see In re E.M.*, 4 N.E.3d at 644 (findings regarding father's continued non-compliance with services support trial court's conclusion that conditions resulting in children's removal from father's care would not be remedied). To the extent that Mother argues that she recently attempted to reengage in services, the trial court was well within its discretion to disregard the efforts Mother made only shortly before termination and to weigh more heavily Mother's history of conduct before those efforts. *See In re K.T.K.*, 989 N.E.2d at 1234. Accordingly, the trial court did not err when it concluded that there is a

reasonable probability that the conditions resulting in removal will not be remedied.[2]

[13] Next, Mother argues that the trial court erred in concluding that termination is in Children's best interests. To determine what is in the child's best interests, the trial court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. In doing so, the trial court must subordinate the interests of the parent to those of the child. *Id.* We have previously held that recommendations by both the DCS manager and child advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, is clear and convincing evidence that termination is in the best interests of the child. *Id.* at 1158-59.

[14] Here, FCM Abell and caseworker Barnwell both testified that terminating Mother's parental rights is in Children's best interests. *See* Tr. pp. 22, 45. Furthermore, the trial court found that Children "have been in the same placement for four years and are bonded and thriving in their placement." Appellant's App. Vol. II p. 52; *see In re K.T.K.*, 989 N.E.2d at 1230 (finding that "children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships.").

---

[2] Because we affirm the trial court's conclusion that there is a reasonable probability that the conditions that resulted in Children's removal will not be remedied, we do not address its alternate conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of Children. *See In re A.G.*, 45 N.E.3d 471, 478 (Ind. Ct. App. 2015) (Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires the trial court to find only one of the two requirements of subsection (B) has been established by clear and convincing evidence), *trans. denied*.

Finally, the trial court concluded that "[i]t would be unfair to [Children] to delay such permanency on the very remote likelihood of [Mother] committing to and completing services," and that "after six years, . . . [Children] certainly have a right to permanency." Appellant's App. Vol. II p. 53; *see In re A.D.S.*, 987 N.E.2d at 1159 ("permanency is a central consideration in determining the best interests of a child"); *see also In re S.P.H.*, 806 N.E.2d 874, 883 (Ind. Ct. App. 2004) (children's needs are too substantial to force them to wait while determining if their parents will be able to parent them). Accordingly, the trial court did not err when it concluded that termination is in Children's best interests.

Affirmed.

Riley, J., and Bradford, J., concur.